HOOD, Judge.
This is an action for damages arising out of a collision between an automobile being driven by Mrs. Anna S. Reed and a station-wagon being driven by Thomas M. Jones. Mrs. Reed and her husband, Etley Reed, died of injuries which they received in that accident. Three grandchildren of Mr. and Mrs. Reed, who were riding as passengers in their car, also were injured as a result of the collision.
The plaintiffs in the present suit are (1) the four surviving children of the late Etley Reed, who claim damages individually and as survivors of their deceased father, and (2) McNallen J. Reed, who claims damages individually and on behalf of his three minor children for the injuries sustained by his children in that accident. The defendants are American Motorists Insurance Company (the insurer of the Reed vehicle), ACF Industries, Inc. (the employer of Jones and owner of the stationwagon involved in the accident), and the.latter’s insurer, Aet-na Casualty and Surety Company. Plaintiffs settled their claims against American Motorists prior to trial, and the case was tried solely on their demands against the remaining defendants, ACF Industries and Aetna.
A separate suit was filed by ACF Industries and Aetna against the Estate of Mr. and Mrs. Etley Reed. In that action Aetna seeks to recover the compensation benefits it paid to Jones, and ACF Industries claims property damages allegedly sustained by it as a result of the accident. That suit and the instant one were consolidated for trial and appeal.
The trial judge concluded that the drivers of both vehicles were negligent. In the instant suit he rendered judgment in favor of plaintiffs and against ACF Industries and Aetna. In the companion suit, he rendered judgment in favor of defendant, Estate of Mr. and Mrs. Etley Reed, rejecting the demands of the plaintiffs in that action. ACF Industries and Aetna appealed. We are rendering a separate judgment in each case on this date. See Aetna Casualty and Surety Company, et a1. v. Reed, et al., 355 So.2d 952 (La.App.1977).
The sole issue presented in these companion suits is whether Thomas M. Jones, the driver of the stationwa'gon involved in the accident, was negligent.
The collision occurred about 4:00 P.M., on May 1, 1970, on Interstate 10 Highway, in Acadia Parish. Immediately before and at the time of the accident Jones was driving his employer’s stationwagon west, in the *950 westbound lane of traffic, on that highway. Mrs. Reed at that time was driving an automobile east, or in the wrong direction, in the westbound lane of traffic on the same highway. The vehicles collided head-on, with the result that all of the occupants of the Reed car were injured. Mrs. Reed died almost instantly. Her husband died 24 days later of the injuries he received. Each of the three minor children in that car sustained serious injuries.
The automobile being driven by Mrs. Reed was owned by Robert 0. Guintard. There was in effect at the time of the accident an automobile liability policy issued to Guintard by American Motorists covering that automobile. Mrs. Reed was driving the car with Guintard’s permission, and she was an insured under the above policy.
The highway at the site of the accident was a relatively new, concrete, four-lane, divided highway, which ran generally east and west. Two lanes were designated for westbound traffic, and two were for eastbound vehicles. The westbound lanes were separated from the eastbound lanes by a grass covered neutral ground, about 44 feet wide, which sloped gently to a ditch in the center. The bottom of the ditch was about five feet below the level of the surface of the highway. The concrete slab making up the two westbound lanes of traffic were 24 feet wide. There were blacktopped shoulders on each side of that slab, the shoulder along the south edge of the westbound lane being six feet wide and the shoulder along the north edge of the slab being ten feet wide. At the time of the accident, the weather was clear, the highway was dry and visibility was good.
Shortly before the collision occurred, Jones drove over an overpass at the point where Interstate 10 crosses Louisiana Highway 13. He overtook and passed an automobile being driven by Robert L. Vincent as he started up that structure, and he completed his passing maneuver just before he reached the crest of the overpass. Jones travelled in the inside (that is, the left or southernmost) lane for westbound traffic as he went over the overpass, and he remained in that lane thereafter until the collision occurred. The Vincent car travelled in the outside (that is, the right or northernmost) lane for westbound traffic as it went over the overpass. When Jones reached the crest of the overpass the Vincent car was about three or four car lengths behind him, in the outside lane.
Vincent was driving 60 miles per hour as he negotiated the overpass, and Jones was driving at a speed of 70 miles per hour, which was the maximum speed limit at that time.
Jones testified that as soon as he reached the crest of the overpass and could see the highway extending west from that point he observed the Reed car about 300 feet directly in front of him, travelling east, or in the wrong direction, in his lane of traffic. He testified that he applied his brakes immediately in an unsuccessful attempt to avoid a collision, and he thinks he travelled a distance of “a hundred feet or so” between the time he first saw the Reed car and the time the collision occurred. He explained that he could not veer to his right because of the presence of the Vincent car in the right lane, and he could not turn to his left because there was a deep gully along the south edge of the pavement.
Jones made it clear that when he first observed the Reed car he could see that it was “coming toward” him. He estimated that it was travelling at a speed of between 40 and 50 miles per hour at that time. He stated that he “had no difficulty” in determining that the Reed vehicle was “coming toward . . . rather than travelling away” from him when he first observed it, because “you don’t have headlights on the back of a car.” He did not see the Reed car enter Interstate 10, or make a U-turn on that highway, or attempt to leave the inside westbound lane of traffic at any time before the collision occurred.
Vincent’s testimony supports that of Jones in some respects. Vincent testified, for instance, that the brake lights on the Jones vehicle came on immediately after Jones reached the crest of the overpass, and *951 that the accident occurred “a second,” or “five seconds,” or “an instant” later, when Jones was “about half way down the overpass.”
Other evidence produced at the trial contradicts the statements of Jones and Vincent as to the location of the Reed car when Jones first saw it. The testimony of the state trooper who investigated the accident, for instance, together with photographs taken at the scene while the wrecked vehicles were still there, establish beyond question that the collision occurred four-tenths of a mile, or 2,112 feet, west of the crest of the overpass. The highway was straight and level at that point. There was no “sharp ditch” or “gully” on the south edge of the pavement. The Jones station wagon left skid marks, about 100 feet long, leading up to the point of impact, and there was no evidence that it left any other skid marks. The collision occurred in the inside, or southernmost, lane for westbound traffic, so it is obvious that Jones made no attempt to veer out of that lane to avoid a collision. The investigating officer estimated that Mrs. Reed was travelling east at a speed of about 30 miles per hour when the vehicles collided.
The evidence convinces us, as it did the trial judge, that Jones drove his vehicle a distance of 2,112 feet between the time he reached the crest of the overpass and the time the collision occurred. There was no traffic on the highway at that time, other than the Jones, Vincent and Reed vehicles, and Jones’ view of the highway ahead of him was clear and unobstructed after he reached the top of the overpass. From that point he could have seen vehicles on the highway west of the overpass at distances of considerably more than 2,112 feet from the crest of that structure.
Considering the speeds at which both vehicles were travelling, and the point where the collision occurred, we find that when Jones reached the crest of the overpass the Reed car was in the westbound lane of traffic, at least 3,000 feet in front of him. Jones could have seen the Reed vehicle at that time, and at all times thereafter until the collision occurred, if he had been maintaining a proper lookout. He concedes that he did not see the Reed car until he reached a point about 300 feet from it, and the evidence shows that he did not attempt to apply his brakes until he was within that distance from the point of impact.
We agree with the trial judge that Jones was negligent in failing to maintain a proper lookout and in failing to bring his vehicle to a stop or to take some other appropriate evasive action when the danger should have become apparent to him.
Defendants argue, however, that the sudden emergency doctrine should be invoked to exonerate Jones from fault. We find no merit to that argument.
A motorist cannot take advantage of the sudden emergency doctrine and thus exonerate himself from fault, if the emergency is brought about or contributed to by his own negligence. Dick v. Phillips, 253 La. 366, 218 So.2d 299 (1969); Stonewall Insurance Company v. Cross, 244 So.2d 327 (La.App. 3 Cir. 1971), and Nichols v. Aetna Casualty & Surety Company, 240 So.2d 568 (La.App. 2 Cir. 1970).
In Stonewall Insurance Company v. Cross, supra, where an issue similar to the one presented here was considered, we said:
“The evidence convinces us that Cross was negligent in failing to bring his car to a stop before he reached the parked Morrison automobile. He saw the unidentified Oldsmobile careening in both lanes of traffic when he had ample time within which to stop, and yet he did not apply his brakes or make any attempt to bring his car under control until a moment before the collision occurred. His negligence in failing to stop before he reached the parked car was a proximate cause of the accident.”

“In the instant suit, we find that Cross brought about or contributed to the emergency by his own negligence in failing to reduce the speed of his car or in failing to bring it to a stop after he observed the danger and before any *952 emergency existed. He and his insurer thus cannot invoke the sudden emergency doctrine to exculpate Cross from fault.”
We concede that in the instant suit Jones was confronted with an emergency when he first observed the Reed vehicle approaching in his lane of traffic, a relatively short distance in front of him. That emergency, however, was brought about or contributed to by Jones’ failure to observe the Reed vehicle long before he reached that point. Although Mrs. Reed clearly was negligent in driving in the wrong lane of traffic, a “sudden emergency” would never have existed if Jones had maintained a proper lookout and would have seen her shortly after he reached the crest of the overpass, when Mrs. Reed was more than half a mile away. If Jones had maintained a proper lookout, we think he would have had ample time within which to take some deliberate action to avoid an accident. The emergency which came into existence later, therefore, was brought about or contributed to by Jones himself. Under those circumstances, we hold that Jones cannot be exonerated from fault under the sudden emergency doctrine.
Defendants contend, however, that Mrs. Reed made a U-turn in the westbound lane of Interstate 10 shortly before the collision occurred, and they argue that Jones should be exonerated from fault under the sudden emergency doctrine since the evidence fails to show where or when that maneuver was made.
The evidence does not show that Mrs. Reed made a U-turn on the highway before this accident occurred. Even if we assume that she made such a maneuver, however, we must also assume that it was made more than 2,112 feet west of the crest of the overpass, because the collision occurred at that point and the Reed car was travelling east at that time. If she made a U-turn after Jones reached the top of the overpass, he must be held to have observed that maneuver in ample time to avoid a collision. If the alleged U-turn was made before Jones reached the crest of the overpass, then such a maneuver did not contribute in any way to the accident. We thus find no merit to this argument by defendants. Although Mrs. Reed was negligent, the evidence convinces us that Jones should have discovered that she was travelling in the wrong lane and would not yield the right of way to him, and that that discovery should have been made in ample time to permit him to avoid a collision. Under those circumstances, we think Jones was under a duty to take some appropriate action in an attempt to avoid an accident, and that he was negligent in failing to do so. His negligence in that respect was a proximate cause of the accident.
We find no error in the judgment of the trial court which condemns Jones’ employer, ACF Industries, Inc., and its insurer, Aetna Casualty and Surety Company, to pay damages to plaintiffs.
No issues are raised on this appeal as to the reasonableness of the awards made by the trial court.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendants-appellants.
AFFIRMED.